## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-2358 |
| | ) | |
| PLAINVILLE LIVESTOCK COMMISSION, INC., | ) | |
| and TYLER D. GILLUM, | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff United States of America, on behalf of the Secretary of Agriculture ("Secretary"), brings this civil action to recover penalties against Defendants Tyler Gillum and Plainville Livestock Commission, Inc. ("Defendants"), for violations of the Packers and Stockyards Act, 1921, as amended and supplemented, 7 U.S.C. § 181 et seq. (hereinafter the "Act" or the "P&SA"), and the regulations promulgated pursuant thereto, 9 C.F.R. § 201.1 et seq. (hereinafter the regulations), and to request that the Court order Defendants to be enjoined permanently from violating two Consent Decisions that were issued on October 22, 2012, and March 4, 2014, respectively. Plaintiff alleges as follows:

### PARTIES

1.      Plaintiff is the United States of America, bringing this action on behalf of the Secretary of Agriculture in his official capacity.

2.      Defendant Plainville Livestock Commission, Inc. (Defendant Plainville), is a corporation organized under the laws of the State of Kansas.

3.      Defendant Tyler D. Gillum (Defendant Gillum) is an individual whose mailing address is 609 N. Broadway, Plainville, Kansas 67643.

4.      Defendant Gillum is, and at time material hereto, was the President of Defendant Plainville, the owner of 100% of the stock issued by Defendant Plainville, and responsible for the direction, management, and control of Defendant Plainville.

5.      At all times material hereto, Defendant Gillum and Defendant Plainville, under the direction, management, and control of Defendant Gillum, were engaged in the business of a market agency selling livestock on commission, as defined by section 301(c) of the Act (7 U.S.C. § 201(c)).

6.      At all times material hereto, Defendants' place of business was 907 NW Third, Plainville, Kansas 67663, within the jurisdiction of this Court.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and pursuant to 28 U.S.C. § 1345, because this action has been commenced by the United States.   In addition, sections 314 and 315 of the P&SA empower the Attorney General of the United States to seek judicial enforcement of an order of the Secretary by filing suit in the district where the defendant has his principal place of business. *See* 7 U.S.C. §§ 215-216.   Section 404 of the P&SA empowers the Attorney General of the United States to initiate appropriate proceedings under the Act to be commenced and prosecuted in the proper courts of the United States.   *See* 7 U.S.C. § 224.

8.      Venue is proper in the District of Kansas under 28 U.S.C. § 1391(b), as at all times material hereto Defendant had his official place of business in this District and a substantial part of the events giving rise to the claim occurred in this District.

## STATEMENT OF THE CLAIM
### THE PACKERS AND STOCKYARDS ACT

9.    The P&SA regulates the conduct of packers, swine dealers, live poultry dealers, stockyard owners, auction markets, market agencies, and dealers, imposing certain affirmative requirements on these entities and proscribing certain conduct by them. *See* 7 U.S.C. § 181 *et seq.* The United States Department of Agriculture's ("USDA") Agricultural Marketing Service, Fair Trade Practices Program, Packers and Stockyards Division (PSD),[1] is responsible for administering and enforcing the Act and investigating concerns regarding unfair and anti-competitive practices in these markets.

10.    Section 301(c) of the Act defines a "market agency" as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing livestock services. Beginning on the date of the enactment of the Clarification of Treatment of Electronic Sales of Livestock Act of 2016, such term includes any person who engages in the business of buying or selling livestock, on a commission or other fee basis, through the use of online, video, or other electronic methods when handling or provided the means to handle receivables or proceeds from such buying or selling, so long as such person's annual average of online, video, or electronic sales of livestock, on a commission or other fee basis, exceeds $250,000." 7 U.S.C. § 201(c).

11.    Section 307(a) of the Act (7 U.S.C. § 208(a)) states, "It shall be the duty of every . . . market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services

---

[1] The PSD formerly was known as USDA's Grain Inspection, Packers and Stockyards Administration, Packers and Stockyards Program.

and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful."

12.     Section 312(a) of the Act (7 U.S.C. § 213(a)) also makes it "unlawful for any . . . market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection . . . with the receiving, marketing, buying, or selling on a commission basis."

13.     Section 201.42(a) of the regulations (9 C.F.R. § 201.42(a)) requires market agencies selling livestock on commission to maintain a custodial account for shippers' proceeds (custodial account) and to deposit in said account, as trust funds, the proceeds generated from the sales of consigned livestock.

14.     Section 201.42(c) of the regulations (9 C.F.R. § 201.42(c)) requires a market agency to deposit in its "custodial account before the close of the next business day . . . after livestock is sold (1) the proceeds from the sale of livestock that have been collected, and (2) an amount equal to the proceeds receivable from the sale of livestock that are due from (i) the market agency, (ii) any owner, officer, or employee of the market agency, and (iii) any buyer to whom the market agency has extended credit.  The market agency shall thereafter deposit in the custodial account all proceeds collected until the account has been reimbursed in full."  If the proceeds receivable from livestock sales cannot be collected and deposited into a market's custodial account by the close of the seventh day after the sale, section 201.42(c) requires the market to make up the shortfall and reimburse the custodial account for the unpaid receivables.

15.     Section 201.42(d) of the regulations (9 C.F.R. § 201.42(d)) prohibits market agencies from using the proceeds from the sale of livestock sold on a commission basis for any

purpose other than paying consignors the net proceeds from the sale of their livestock, after deducting the market's lawful charges.

16.     The Department's administrative case law has consistently held that the failure of a market agency to maintain its custodial account in accordance with the requirements of section 201.42 is a violation of sections 307 and 312(a) of the Act (7 U.S.C. §§ 208, 213(a)). *See In Re: Perkins Livestock, LLC, & Robb Taylor, Respondents*, Docket No. 13-0134, 2013 WL 2148057, at *2 (U.S.D.A. Apr. 24, 2013*); In re: Porter*, 47 Agric. Dec. 656, 672 (1988); *In re: Blackfoot Livestock Commission Co.*, 45 Agric. Dec. 590, 604 (1986), *aff'd* 810 F.2d 916 (9th Cir. 1987); *In Re: Farmers Livestock Auction, Inc.*, 45 Agric. Dec. 692, 701 (Nov. 14, 1985); *In re: Powell*, 41 Agric. Dec. 1354, 1361 (1982); *In re: Arab Stock Yard*, 37 Agric. Dec. 293, 301-02, 310-02, 310-11 (1978), *aff'd* 582 F.2d 39(CA 5 1978); *In re: Sechrist Sales Co.*, 36 Agric. Dec. 665, 666, 671-75 (1977); *In re: Harry C. Hardy*, 33 Agric. Dec. 1383, 1398-1406 (1974).

17.     Section 312(b) of the Act (7 U.S.C. § 213(b)) states, "Whenever complaint is made to the Secretary by any person, or whenever the Secretary had reason to believe, that any stockyard owner, market agency, or dealer is violating the provisions of [section 312(a)], the Secretary after notice and full hearing may make an order that he shall cease and desist from continuing such violation that the Secretary finds that it does or will exist.  The Secretary also may assess a civil penalty of not more than $11,000 for each such violation."

18.     Section 314(a) of the Act (7 U.S.C. § 215) states, "Any stockyard owner, market agency, or dealer who knowingly fails to obey any order made under the provisions of sections 211, 212, or 213 of this title shall forfeit to the United States the sum of $750[2] for each offense.

---

[2] The penalty was amended by 7 C.F.R. § 3.91(b)(6)(v) (effective May 7, 2010) pursuant to Pub. L. Nos. 101-410 and 104-134.

Each distinct violation shall be a separate offense, and in case of a continuing violation each day shall be deemed a separate offense.  Such forfeiture shall be recoverable in a civil suit in the name of the United States."

19.     The penalty of $750 is effective for violations of section 314(a) of the Act that occurred beginning on May 8, 2010.

20.     Section 315 of the Act states, "If any stockyard owner, market agency, or dealer fails to obey any order of the Secretary other than for the payment of money while the same is in effect, the . . . United States . . . may apply to the district court for the district in which such person has his principal place of business for the enforcement of such order.  If after hearing the court determines that the order was lawfully made and duly served and that such person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person, his officers, agents, or representatives from further disobedience of such order or to enjoin upon him or them obedience to the same."

21.     Section 402 of the Act (7 U.S.C. § 222) incorporates section 9 of the Federal Trade Commission Act (15 U.S.C. § 49), which provides that the "district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person . . . to comply with the provisions of [the Act]."

22.     On October 22, 2012, an Administrative Law Judge (ALJ) of the USDA, acting as and for the Secretary, under authority delegated to him by the Secretary to perform regulatory functions, issued a Consent Decision and Order in *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket No. 12-0546 (2012 Consent Decision), attached hereto as Exhibit A.

23.     The 2012 Consent Decision was lawfully entered upon the basis of a complaint issued and served upon Defendant under provisions of the Act.

24.     The 2012 Consent Decision, in pertinent part, ordered Defendants to cease and desist from (1) failing to maintain their custodial account for shippers' proceeds (hereinafter, custodial account) in conformity with the requirements of 9 C.F.R. § 201.42, (2) failing to deposit in their custodial account amounts equal to the outstanding proceeds receivable from the sale of consigned livestock within the times prescribed by 9 C.F.R. § 201.42, and (3) using funds received from the sale of consigned livestock for the payment of bank fees or for any purpose other than payment to consignors of the amount due from the sale of their livestock and the payment of lawful marketing charges.

25.     On March 4, 2014, an ALJ of the USDA, acting for the Secretary, under authority delegated to him by the Secretary to perform regulatory functions, issued a Decision without Hearing by Reason of Consent in *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket Nos. 14-0076 and 14-0077 (2014 Consent Decision), attached hereto as Exhibit B.

26.     The 2014 Consent Decision was lawfully entered upon the basis of a complaint issued and served upon Defendant under provisions of the Act.

27.     The 2014 Consent Decision, in pertinent part, ordered Defendants to cease and desist from failing to properly maintain their custodial account in strict conformity with the Act and 9 C.F.R. § 201.42.

28.     On July 31, 2014, an analysis of the Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $2,900,474.79 and had to offset such checks a balance in the custodial account of

$423.36 and proceeds receivable of $934,954.46, resulting in a custodial account shortage in the amount of $1,965,096.97.

29.     On September 1, 2014, a second analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $1,205,578.94 and had to offset had to offset such checks balance in the custodial account of -$0.01 and proceeds receivable of $41,148.55, resulting in a custodial account shortage in the amount of $1,164,430.40.

30.     During the analysis period from July 31, 2014, through September 1, 2014, Defendant Plainville issued 143 insufficient funds (NSF) checks from its custodial account and the bank holding the custodial account had charged the account $4,290.00 in NSF fees.

31.     On May 31, 2016, an analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $5,541,502.80 and had to offset such checks a balance in the custodial account of $0, proceeds receivable of $0, deposits in transit of $0, and proceeds on hand in the approximate amount of $0, resulting in a custodial account shortage in the amount of $5,541,502.80.

32.     On June 30, 2016, a second analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $5,094,789.10 and had to offset such checks a balance in the custodial account of $295.95 and proceeds receivable of $200,500.77, resulting in a custodial account shortage in the amount of $4,893,992.38.

33.     During the analysis period from May 31, 2016, through June 30, 2016, Defendant Plainville issued 161 NSF checks from its custodial account and that the bank holding the custodial account charged the account $4,830.00 in NSF fees.

34.     On July 31, 2017, an analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $9,641,594.46 and had to offset such checks a balance in the custodial account of $45,928.43, proceeds receivable of $46,615.93, deposits in transit of $0, and proceeds on hand in the approximate amount of $0, resulting in a custodial account shortage in the amount of $9,549,050.10.

35.     A second analysis of Defendant Plainville's custodial account was attempted on August 21, 2017, but could not be completed because Defendant Gillum did not provide Plaintiff with a copy of Defendant Plainville's August 31, 2017, custodial bank account statement.

36.      On October 31, 2017, an analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $2,356,727.39 and had to offset such checks a negative balance in the custodial account of $141,901.48, proceeds receivable of $2,292,747.22, deposits in transit of $0, and proceeds on hand in the approximate amount of $0, resulting in a custodial account shortage in the amount of $205,881.65.

37.     On November 30, 2017, a second analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $1,419,943.50 and had to offset such checks a balance in the custodial account of $320,344.55 and proceeds receivable of $906,336.54, resulting in a custodial account shortage in the amount of $193,262.41.

38.     On April 30, 2018, an analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the

amount of $847,636.33 and had to offset such checks a balance in the custodial account of - $281,800.37, proceeds receivable of $54,978.03, deposits in transit of $0, and proceeds on hand in the approximate amount of $0, resulting in a custodial account shortage in the amount of $1,074,458.67.

39.     On May 31, 2018, a second analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $566,292.12 and had to offset such checks a balance in the custodial account of - $1,188,826.62 and proceeds receivable of $72,712.97, resulting in a custodial account shortage in the amount of $1,682,405.77.

40.     On June 4, 2018, a third analysis of Defendant Plainville's custodial account showed that Defendant Plainville had outstanding checks drawn on its custodial account in the amount of $463,491.39 and had to offset such checks a balance in the custodial account of $4,056.75 and proceeds receivable of $37,772.36, resulting in a custodial account shortage in the amount of $421,662.28.

41.     During the period from March 6, 2018, through May 15, 2018, Defendant Plainville issued 33 NSF checks from its custodial account totaling approximately $ 1,250,073.49. In so doing, Defendant Plainville failed to remit, when due, proceeds due the seller in the amount of $1,125,333.85.  These remittances were made between one and fourteen (1-14) days late.

42.     For the 33 NSF checks referenced in paragraph 40 above, the bank holding the custodial account charged $1500.00 in overdraft fees and $775.00 in returned item fees.

43.     The allegations in paragraphs 28 through 42 above establish that, while operating as a market agency selling livestock on commission, Defendants knowingly failed to

maintain their custodial account in strict conformity with the requirements of sections 307(a) (7 U.S.C. § 208(a)) and 312(a) (7 U.S.C. § 213(a)) of the P&SA and section 201.42 (9 C.F.R. § 201.42) of the regulations, as they consistently allowed large shortages to accrue in the custodial account and permitted costs, namely bank fees, to regularly be deducted from the custodial account.

44.     The allegations in paragraphs 28 through 42 above establish that Defendants knowingly violated the 2012 and 2014 Consent Decisions.  In doing so they also knowingly failed to obey an order under Section 312(b) of the Act (7 U.S.C. § 213(b)).

45.     The allegations in paragraphs 28 and 44 above establish that, while operating as a market agency selling livestock on commission, Defendants also knowingly failed to remit sales proceeds before the close of the next business day following the sale in violation of section 312(a) of the P&SA and section 201.43 (9 C.F.R. § 201.43) of the regulations.

46.     On information and belief, Defendants continue to operate as a market agency selling on commission and while failing to maintain their custodial account in strict conformity with the requirements of the Act and section 201.42 of the regulations, in further contravention of the Act and the provisions of the 2012 and 2014 Consent Decisions.

**WHEREFORE**, Plaintiff, the United States of America, prays:

1.     That the Court issue judgment in favor of the United States and against the Defendants;

2.     That the Court enter judgment against Defendants in the sum of $117,750.00 for knowingly failing to obey the provisions of the Secretary's October 22, 2012, and March 4, 2014, Consent Decisions, said sum consisting of $750 for each day of the continuing offense as set forth in paragraphs 28 through 42 above, which occurred subsequent to the May 7, 2010

amendment to 7 C.F.R. § 3.91(b)(6)(v) that raised the penalty for violations of section 314(a) of the Act (7 U.S.C. § 215) from $650 per violation to $750 per violation;

3.     That the Court permanently enjoin Defendants from violating the provisions Orders of the Secretary of Agriculture that were issued in *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket No. 12-0546, and *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket Nos. 14-0076 and 14-0077.

4.     That the Court permanently enjoin Defendants from engaging in business, within the meaning of the P&SA, in any capacity without properly maintaining their custodial account for shipper's proceeds in strict conformity with the Act and 9 C.F.R. § 201.42;

5.     That the Court permanently enjoin Defendants from issuing checks or any other kind of payment instrument in purported payment of livestock purchases without having and maintaining sufficient funds on deposit and available in the custodial account upon which such checks or instruments are drawn to pay the checks or instruments when they are presented for payment, in strict conformity with the Act and 9 C.F.R. § 201.42;

6.     That the Court permanently enjoin Defendants from engaging in business, within the meaning of the P&SA, in any capacity without properly remitting sales proceeds before the close of the next business day following the sale, in strict conformity with the Act and section 201.43;

7.     That the Court permanently enjoin Defendants from engaging in business, within the meaning of the P&SA, in any capacity without properly maintaining all business records required by the Act and regulations to allow the USDA to determine whether Defendants are properly maintaining their custodial account in strict conformity with the Act and 9 C.F.R. § 201.42.  Pursuant to section 401 of the Act (7 U.S.C. § 221), Defendants shall

keep and maintain all scale tickets, purchase and sale invoices, balance sheets, income statements, monthly reconciliations, and any and all other documents necessary to fully and accurately disclose all purchases and payments for livestock, sales of livestock, and all other transactions involved in the business, and shall make all such documents available to the Packers and Stockyards Division when lawfully requested to do so;

8.     That the Court order that Defendants suspend their market agency operations, including any and all consignment sales subject to the PS&A and regulations, for a period of two consecutive regularly conducted sales occurring on July 24 and July 31;

9.     That Defendant pay the costs of this proceeding; and

10.    That the United States be awarded any further relief the Court deems just and proper.

Respectfully filed,

STEPHEN R. MCALLISTER
United States Attorney

/s/ Jason Oller
Jason E. Oller, #24341
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH:  913.551.6730
FX:  913.551.6541
Jason.Oller@usdoj.gov
*Attorney for Plaintiff*

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff, United States, designates Kansas City, Kansas, as the place of trial.

/s/ Jason Oller
JASON OLLER, AUSA

EXHIBIT LIST

EXHIBIT A: DOCUMENT DISTRIBUTION FORM 12-0546

EXHIBIT B: DOCUMENT DISTRIBUTION FORM 14-0076

# Exhibit A

**OFFICE OF ADMINISTRATIVE LAW JUDGES**
**Hearing Clerk's Office**

**Document Distribution Form**

Docket #: **12-0546**
Document(s): **Consent Decision and Order**

1. **Date sent to:** ☐ Respondent(s)   ☒ Petitioner(s): 10-23-12

☐ Regular Mail      ☐ Fax            ☒ Certified Mail

☐ Registered Mail   ☐ FedEx          ☐ Personal Service

☐ Other:

**Address:**

Gregory A. Schwartz,
Glassman, Bird, Schwartz, &
Park L.L.P.
200 West 13th Street
P.O. Box 727
Hays, Kansas 67601

| U.S. Postal Service™ |
|---|
| **CERTIFIED MAIL™ RECEIPT** |
| *(Domestic Mail Only; No Insurance Coverage Provided)* |
| **For delivery information visit our website at www.usps.com®** |

Postage

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

7005 1160 0002 7837 1484

Postmark
Here

12-0546

Gregory A. Schwartz,
Glassman, Bird, Schwartz, & Park L.L.P.
200 West 13th Street
P.O. Box 727
Hays, Kansas 67601

2. **Date sent to OGC:** 10-23-12

☒ Inter-Office Mail                    ☒ Inter-Office Mail

☐ Messenger                           ☐ Messenger

☐ Pick-Up                             ☐ Pick-Up

☐ Other email                         ☐ Other email

**OGC - Served and Address:**        **Agency - Served and Address:**

Kris Ramaraju, OGC                   ALAN R. CHRISTIAN, GIPSA
RM 2319 South                        RM. 2055 SOUTH

**Signature:** Leslie E. Whitfield

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| In re: | ) | P & S Docket No. 12-0546 |
| | ) | |
| Plainville Livestock Commission, Inc., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Tyler Gillum, | ) | |
| | ) | |
| Respondents | ) | Consent Decision and Order |

This proceeding was instituted under the Packers and Stockyards Act (7 U.S.C. § 181 et seq.), by a complaint filed by the Deputy Administrator, Packers and Stockyards Program, Grain Inspection, Packers and Stockyards Administration (GIPSA), United States Department of Agriculture, alleging that respondents Plainville Livestock Commission, Inc. and Tyler Gillum willfully violated the Act and the regulations promulgated thereunder (9 C.F.R. § 201.1 et seq.). This decision is entered pursuant to the consent decision provision of the rules of practice applicable to this proceeding (7 C.F.R. § 1.138).

The respondents admit the jurisdictional allegations in paragraph I of the complaint and specifically admit that the Secretary has jurisdiction in this matter, neither admit nor deny the remaining allegations, waive oral hearing and further procedure, and consent and agree, for the purpose of settling this proceeding and for such purpose only, to the entry of this decision.

The complainant agrees to the entry of this decision.

1

<u>Findings of Fact</u>

(a)     Respondent Plainville Livestock Commission, Inc. is a corporation organized

under the laws of the State of Kansas, with a mailing address of P.O. Box 356,

Plainville, KS 67663.

(b)     Respondent Tyler Gillum is an individual whose business mailing address is

P.O. Box 356, Plainville, KS 67663.

(c)     Respondent Plainville Livestock Commission, Inc. under the direction,

management, and control of respondent Tyler Gillum, at all times material herein

was:

     (1)     Engaged in the business of conducting and operating Plainville

     Livestock Commission Inc., a stockyard posted under and subject to the

     provisions of the Act;

     (2)     Engaged in the business of a market agency selling livestock on a

     commission basis in commerce; and

     (3)     Registered with the Secretary of Agriculture as a market agency to sell

     livestock on a commission basis in commerce.

(d)     Respondent Tyler Gillum at all times material herein was:

     (1)     President of respondent Plainville Livestock Commission, Inc.;

     (2)     Owner of 100% of the stock issued by respondent Plainville Livestock

Commission, Inc.; and

2

(3)     Responsible for the direction, management and control of respondent Plainville Livestock Commission, Inc.

### Conclusions

The respondents having admitted the jurisdictional facts and the parties having agreed to the entry of this decision, such decision will be entered.

### Order

Respondents, their agents and employees, directly or through any corporate or other device, in connection with their activities subject to the Act, shall cease and desist from:

(1) Failing to maintain their "Custodial Account for Shippers' Proceeds" in conformity with the provisions of section 201.42 of the regulations (9 C.F.R. § 201.42);

(2) Failing to deposit in their "Custodial Account for Shippers' Proceeds" within the times prescribed by section 201.42 of the regulations (9 C.F.R § 201.42) amounts equal to the outstanding proceeds receivable from the sale of consigned livestock; and

(3) Using funds received from the sale of consigned livestock for the payment of bank fees, or for any purpose other than payment to consignors of the amount due from the sale of their livestock and the payment of lawful marketing charges.

3

Respondents shall maintain accounts, records and memoranda as fully and correctly disclose all transactions involved in their business, as required by section 401 of the Act (7 U.S.C. § 221), including, but not limited to, copies of balance sheets for their custodial account, copies of account reconciliations for their general account, copies of account reconciliations for their custodial account, livestock inventory records and accounts receivable records.

In accordance with section 312(b) of the Act (7 U.S.C. § 213(b)), respondents are assessed, jointly and severally, a civil penalty in the amount of twelve-thousand and nine-hundred dollars ($12,900.00). Six thousand four-hundred and fifty dollars ($6,450) of this amount will be payable immediately upon entry of this consent decision and order. The remaining balance of six thousand four-hundred and fifty dollars ($6,450) shall be payable on or before ninety days after the effective date of this order, and shall be mailed to the following address: USDA, GIPSA, P.O. Box 790335, St. Louis, MO, 63179-0335.

This Order shall have the same force and effect as if entered after a full hearing. The provisions of this Order shall become final and effective on the sixth day after service of this consent decision and order on the respondents.

Copies of this decision shall be served upon the parties.

4

Tyler Gillum, Respondent,
on behalf of himself and on behalf of
Plainville Livestock Commission, Inc.
Respondents

Gregory A. Schwartz
Glassman, Bird, Schwartz, and Park L.L.P.
Attorney for Respondents

Krishna G. Ramaraju
Attorney for Complainant


Done at Washington, D.C.

this _____ day of _____, 2012


Peter M. Davenport
Chief Administrative Law Judge

5

_____

Tyler Gillum, Respondent,
on behalf of himself and on behalf of
Plainville Livestock Commission, Inc.
Respondents


_____

Gregory A. Schwartz
Glassman, Bird, Schwartz, and Park L.L.P.
Attorney for Respondents

_____

Krishna G. Ramaraju
Attorney for Complainant


Done at Washington, D.C.

this ___ day of _____, 2012


_____

Peter M. Davenport
Chief Administrative Law Judge


5

# Exhibit B

# OFFICE OF ADMINISTRATIVE LAW JUDGES
## HEARING CLERK'S OFFICE

---

## Document Distribution Form

---

Docket No.:                                    14-0076

Document(s):  DECISION WITHOUT HEARING BY REASON OF CONSENT


Date sent to Non-Governmental Party:           3/4/14

Sent via:
                                               Certified Mail

U.S.P.S. Tracking #:         7003 1010 0001 7367 4350

Non-Governmental Party Address:

PLAINVILLE LIVESTOCK COMMISSION, INC.
P.O. BOX 356
PLAINVILLE, KANSAS 67663

Date sent to Governmental Party and OGC:       3/4/14

OGC - Served and Address:

Lisa Jabaily, Esq.
Room 2324-S, Mail Stop 1405
Office of General Counsel
1400 Independence Ave. S.W.
Washington, DC 20250

Agency - Served and Address:

S. Brett Offutt - GIPSA Room 2055 South Bldg. Wash., DC

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

In re: )  Docket No. 14- 0076
                             )  14-0077

Plainville Livestock Commission, Inc., )

      and                      )

Tyler Gillum, )

                             )

    Respondents          )  Decision without Hearing
                                     by Reason of Consent

This proceeding was instituted under the Packers and Stockyards Act (7 U.S.C. § 181 et

seq.), by a complaint filed by the Deputy Administrator, Packers and Stockyards Program, Grain

Inspection, Packers and Stockyards Administration (GIPSA), United States Department of

Agriculture, alleging that Respondents Plainville Livestock Commission, Inc. and Tyler Gillum

violated the Act. This decision is entered pursuant to the consent decision provision of the rules

of practice applicable to this proceeding (7 C.F.R. § 1.138).

Respondents admit the jurisdictional allegations in paragraph I of the complaint and

specifically admit that the Secretary has jurisdiction in this matter, neither admits nor denies the

remaining allegations, waive oral hearing and further procedure, and consent and agree, for the

purpose of settling this proceeding and for such purpose only, to the entry of this decision.

The complainant agrees to the entry of this decision.

Findings of Fact

(a)    Respondent Plainville Livestock Commission, Inc., is a corporation organized under the

laws of the State of Kansas, with a mailing address of PO Box 356, Plainville, Kansas, 67663.

1

(b)      Respondent Tyler Gillum is an individual whose business mailing address is PO Box 356,

Plainville, Kansas, 67663.

(c)      Respondent Plainville Livestock Commission, Inc., under the direction, management, and

control of Respondent Tyler Gillum, is, and at all times material herein was:

   (1)      Engaged in the business of conducting and operating Plainville Livestock

   Commission, Inc., a stockyard posted under and subject to the provisions of the Act;

   (2)      Engaged in the business of a market agency selling livestock on a commission

   basis in commerce; and

   (3)      Registered with the Secretary of Agriculture as a market agency to sell livestock

   on a commission basis in commerce.

(d)      Respondent Tyler Gillum is, and at all times material herein was:

   (1)      President of Respondent Plainville Livestock Commission, Inc.;

   (2)      Owner of 100% of Plainville Livestock Commission, Inc.; and

   (3)      Responsible for the direction, management and control of Respondent Plainville

Livestock Commission, Inc.

## Conclusions

The respondents having admitted the jurisdictional facts and the parties having agreed to

the entry of this decision, such decision will be entered.

## Order

Respondents, their agents and employees, directly or indirectly through any corporate or

other device, shall cease and desist from failing to properly maintain their custodial account for

2

shippers' proceeds in strict conformity with the Act and  section 201.42 of the regulations (9 C.F.R. § 201.42).

In accordance with section 312(b) of the Act (7 U.S.C. § 213(b)), respondents are hereby assessed, jointly and severally, a civil penalty in the amount of Sixteen Thousand Dollars ($16,000.00).

Respondents, their agents and employees, directly or indirectly through any corporate or other device, shall cease and desist from failing to keep and maintain accounts, records, and memoranda that fully and correctly disclose all transactions involved in their business.

This Order shall have the same force and effect as if entered after full hearing. The provisions of this Order shall become final and effective on the sixth (6th) day of this Consent Decision and Order on the respondents (7 C.F.R. § 1.138).

Copies of this decision and order shall be served upon the parties.


_____
Tyler Gillum
Respondent


_____
Lisa Jabaily
Attorney for Complainant


Done at Washington, D.C.


this _____ day of _____, 2014


_____
Administrative Law Judge


3

CERTIFIED MAIL™

7003 1010 0001 7367 4350

7003 1010 0001 7367 4350
7003 1010 0001 7367 4350

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

## U.S. Postal Service™
## CERTIFIED MAIL™ RE
(Domestic Mail Only; No Insuran

For delivery information visit our

OFFIC

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Reciept | | |
| (Endorsement Req | | |
| Restricted De | | |
| (Endorseme | | |
| Total | | |

To
Stre
or PO
City, State,

PLAINVILLE LIVESTOCK COMMISSION, INC.
P.O. BOX 356
PLAINVILLE, KANSAS 67663

Postmark
Here

PS Form 3800, June 2002                    See Reverse for Ins...ions