## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,  )
    Plaintiff,  )
      )
v.  )    Civil Action No. 18-cv-2358-JWL-GEB
      )
PLAINVILLE LIVESTOCK COMMISSION, INC.,  )
and TYLER D. GILLUM,  )
    Defendants.  )

### CONSENT DECREE

The United States of America, on behalf of the Secretary of Agriculture (Plaintiff), and

Plainville Livestock Commission, Inc. (Plainville), and Mr. Tyler D. Gillum (collectively,

Defendants) enter into this Consent Decree to resolve the claims arising under the Packers and

Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 *et seq.* (hereinafter, the P&SA or the Act)

in the above-captioned case.  Plaintiff is represented by Assistant United States Attorney Jason

Oller. Defendants were represented in negotiations by Jeff Todd, esquire, of McAfee & Taft, who

is not signing the consent decree only because he is not licensed in the United States District Court

for the District of Kansas.  Plaintiff and Defendants are collectively referred to as the "parties".

The parties hereby state as follows:

1.    This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1331 because

this action arises under the laws of the United States and pursuant to 28 U.S.C. § 1345 because

this action has been commenced by the United States. In addition, Section 404 of the P&SA (7

U.S.C. § 224) empowers the Attorney General of the United States to initiate proceedings under

the Act to be commenced in the proper courts of the United States.

2.     The P&SA authorizes the Plaintiff to regulate the conduct of packers, swine dealers, live poultry dealers, stockyard owners, market agencies, and dealers as those terms are defined in the Act.

3.     Defendant Tyler D. Gillum is the President and owner of Plainville, which is engaged in the business of a market agency as defined in Section 301(c) of the P&SA (7 U.S.C. § 201(c)). Gillum is responsible for the direction, management, and control of Plainville and thus is engaged in the business of a market agency as defined in Section 301(c) of the Act.

4.     Section 307(a) of the Act (7 U.S.C. § 208(a)) states, "It shall be the duty of every . . . market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful."

5.     Section 312(a) of the Act (7 U.S.C. § 213(a)) also makes it "unlawful for any . . . market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection . . . with the receiving, marketing, buying, or selling on a commission basis."

6.     Section 201.42(a) of the regulations (9 C.F.R. § 201.42(a)) promulgated pursuant to the P&SA requires that "[e]very market agency engaged in selling livestock on a commission or agency basis shall establish and maintain a separate bank account as 'Custodial Account for Shippers' Proceeds,' . . . . to disclose that the depositor is acting as a fiduciary and that the funds in the account are trust funds."

7.     Section 201.42(c) of the regulations (9 C.F.R. § 201.42(c)) requires a market agency to deposit in its "custodial account before the close of the next business day . . . after livestock is sold (1) the proceeds from the sale of livestock that have been collected, and (2) an

2

amount equal to the proceeds receivable from the sale of livestock that are due from (i) the market agency, (ii) any owner, officer, or employee of the market agency, and (iii) any buyer to whom the market agency has extended credit.  The market agency shall thereafter deposit in the custodial account all proceeds collected until the account has been reimbursed in full."  If the proceeds receivable from livestock sales cannot be collected and deposited into a market's custodial account by the close of the seventh day after the sale, section 201.42(c) requires the market to make up the shortfall and reimburse the custodial account for the unpaid receivables.

8.      Section 201.42(d) of the regulations (9 C.F.R. § 201.42(d)) prohibits market agencies from using the proceeds from the sale of livestock sold on a commission basis for any purpose other than paying consignors the net proceeds from the sale of their livestock, after deducting the market's lawful charges.

9.      The U.S. Department of Agriculture's administrative case law has consistently found that the failure of a market agency to maintain its custodial account in accordance with the requirements of section 201.42 is a violation of sections 307 and 312(a) of the Act (7 U.S.C. §§ 208, 213(a)).  *See In Re: Perkins Livestock, LLC, & Robb Taylor, Respondents*, Docket No. 13-0134, 2013 WL 2148057, at *2 (USDA Apr. 24, 2013); *In re: Porter*, 47 Agric. Dec. 656, 672 (1988); *In re: Blackfoot Livestock Commission Co.*, 45 Agric. Dec. 590, 604 (1986), *aff'd* 810 F.2d 916 (9th Cir. 1987); *In Re: Farmers Livestock Auction, Inc.*, 45 Agric. Dec. 692, 701 (1985); *In re: Powell*, 41 Agric. Dec. 1354, 1361 (1982); *In re: Arab Stock Yard*, 37 Agric. Dec. 293, 301-02, 310-02, 310-11 (1978), *aff'd* 582 F.2d 39 (5th Cir. 1978); *In re: Sechrist Sales Co.*, 36 Agric. Dec. 665, 666, 671-75 (1977); *In re: Harry C. Hardy*, 33 Agric. Dec. 1383, 1398-1406 (1974).

10.     Section 312(b) of the Act (7 U.S.C. § 213(b)) states, "[w]henever complaint is made to the Secretary by any person, or whenever the Secretary had reason to believe, that any stockyard

3

owner, market agency, or dealer is violating the provisions of [section 312(a)], the Secretary after notice and full hearing may make an order that he shall cease and desist from continuing such violation that the Secretary finds that it does or will exist.  The Secretary also may assess a civil penalty of not more than $11,000[1] for each such violation."

11.     On October 22, 2012, an Administrative Law Judge (ALJ) of the USDA, acting for the Secretary, under authority delegated to him by the Secretary to perform regulatory functions, issued a Consent Decision and Order in *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket No. 12-0546 (2012 Consent Decision).

12.     The 2012 Consent Decision ordered Defendants to cease and desist from (1) failing to maintain their custodial account for shippers' proceeds (custodial account) in conformity with the requirements of 9 C.F.R. § 201.42, (2) failing to deposit in their custodial account amounts equal to the outstanding proceeds receivable from the sale of consigned livestock within the times prescribed by 9 C.F.R. § 201.42, and (3) using funds received from the sale of consigned livestock for the payment of bank fees or for any purpose other than payment to consignors of the amount due from the sale of their livestock and the payment of lawful marketing charges.

13.     On March 4, 2014, an ALJ of the USDA, acting for the Secretary, under authority delegated to him by the Secretary to perform regulatory functions, issued a Decision without Hearing by Reason of Consent in *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket Nos. 14-0076 and 14-0077 (2014 Consent Decision).

---

[1] As required by Pub. L. 101-410 and 104-134, 7 C.F.R. § 3.91 amended the civil penalties in this section from $10,000 to a maximum of $11,000, effective for violations occurring after May 7, 2010.

14.     The 2014 Consent Decision, in pertinent part, ordered Defendants to cease and desist from failing to properly maintain their custodial account in strict conformity with the P&SA and 9 C.F.R. § 201.42.

15.     Defendants acknowledge that the prior Orders of the Secretary of Agriculture in P&S Docket Numbers 12-0546 and 14-0076/14-0077 were lawfully entered and duly served. Additionally, they agree to the entry of this Consent Decree without a hearing.

16.     The United States alleges that Defendants violated the Act and regulations as it relates to their obedience to two orders of the Secretary of Agriculture that directed them to maintain their custodial account for shippers' proceeds in full compliance with all statutory and regulatory requirements as alleged in the Complaint and as specified as herein.  Defendants deny the allegations, but agree to the entry of this Consent Decree to avoid the costs and uncertainty of litigation.

17.     Plaintiff contends that the allegations in  the complaint show that, while operating as a market agency selling livestock on commission, Defendants failed to maintain their custodial account in strict conformity with the requirements of sections 307(a) (7 U.S.C. § 208(a)) and 312(a) (7 U.S.C. § 213(a)) of the P&SA and section 201.42 (9 C.F.R. § 201.42) of the regulations, as they consistently allowed large shortages to accrue in the custodial account and permitted unlawful charges, namely bank fees, to regularly be deducted from the custodial account. Defendants also failed to remit sales proceeds before the close of the next business day following the sale in violation of section 312(a) of the P&SA and section 201.43 (9 C.F.R. § 201.43) of the regulations.

18.    Plaintiff further alleges that the conduct alleged in the complaint establishes that Defendants knowingly violated the 2012 and 2014 Consent Decisions. In doing so they also knowingly failed to obey an order under Section 312(b) of the Act (7 U.S.C. § 213(b)).

19.    Section 314(a) of the Act (7 U.S.C. § 215) states, "[a]ny stockyard owner, market agency, or dealer who knowingly fails to obey any order made under the provisions of sections 211, 212, or 213 of this title shall forfeit to the United States the sum of $750[2] for each offense. Each distinct violation shall be a separate offense, and in case of a continuing violation each day shall be deemed a separate offense. Such forfeiture shall be recoverable in a civil suit in the name of the United States." Based on the available evidence, Plaintiff alleges that the violation occurred, at a minimum, over the course of 157 days.

20.    Section 315 of the Act (7 U.S.C. § 216) further provides, "If any stockyard owner, market agency, or dealer fails to obey any order of the Secretary other than for the payment of money while the same is in effect, the . . . United States . . . may apply to the district court for the district in which such person has his principal place of business for the enforcement of such order. If after hearing the court determines that the order was lawfully made and duly served and that such person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person, his officers, agents, or representatives from further disobedience of such order or to enjoin upon him or them obedience to the same."

21.    The parties agree that this Consent Decree is intended to resolve and release only the USDA's claim that Defendants violated the Packers and Stockyards Act and associated

---

[2] The penalty was amended by 7 C.F.R. § 3.91(b)(6)(v) (effective May 7, 2010) pursuant to Pub. L. Nos. 101-410 and 104-134. The penalty of $750 is effective for violations of section 314(a) of the Act that occurred beginning on May 8, 2010.

regulations in the manner outlined in the complaint and above. The United States does not resolve or release any other claim or liability, even if arising from the same or similar facts, including any claim or liability arising under Title 26, U.S. Code (Internal Revenue Code); any criminal claim or liability; any administrative claim or liability; any claim or liability to the United States (or its agencies) for any conduct other than what is intended to be resolved by this Consent Decree; any claim or liability based upon obligations created by this consent decree; or any claim or liability of individuals. The parties further agree that Plainville and Mr. Gillum waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the conduct underlying this suit that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Consent Decree bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Consent Decree constitutes an agreement by the United States concerning the characterization of the Consent Decree for purposes of the Internal Revenue laws, Title 26 of the United States Code.

22.     Defendants acknowledge the sufficiency of Plaintiff's allegations and evidence that would enable Plaintiff to seek a civil penalty and injunctive relief. Given the mutual desire of the parties is to resolve the allegations made in the complaint in the above-captioned case without the need for further litigation, the parties agree to an order of the Court as set forth below.

Based on the Agreement of the parties, it is **ORDERED, ADJUDGED, AND DECREED** as follows:

23.     Defendants are hereby permanently enjoined from further violating the Orders of the Secretary of Agriculture that were issued in *In re: Plainville Livestock Commission, Inc., and*

*Tyler Gillum*, P&S Docket No. 12-0546, and *In re: Plainville Livestock Commission, Inc., and Tyler Gillum*, P&S Docket Nos. 14-0076 and 14-0077.

24.     Defendants are further permanently enjoined from engaging in business, within the meaning of the P&SA, in any capacity without properly maintaining their custodial account for shipper's proceeds in strict conformity with the Act and 9 C.F.R. § 201.42.  Said conformity shall include keeping the account balanced, meaning that the custodial account's balance is $0 or greater per an analysis done by the Packers and Stockyards Division.

25.     Defendants are further permanently enjoined from issuing checks or any other kind of payment instrument in purported payment of livestock purchases without having and maintaining sufficient funds on deposit and available in the custodial account upon which such checks or instruments are drawn to pay the checks or instruments when they are presented for payment, in strict conformity with the Act and 9 C.F.R. § 201.42.

26.     Defendants are further permanently enjoined from engaging in business, within the meaning of the P&SA, in any capacity without properly remitting sales proceeds before the close of the next business day following the sale, in strict conformity with the Act and 9 C.F.R. § 201.43.

27.     Defendants are further permanently enjoined from engaging in business, within the meaning of the P&SA, in any capacity without properly maintaining all business records required by the Act and regulations to allow the USDA to determine whether Defendants are properly maintaining their custodial account in strict conformity with the Act and 9 C.F.R. § 201.42. Pursuant to section 401 of the Act (7 U.S.C. § 221), Defendants shall keep and maintain all scale tickets, purchase and sale invoices, balance sheets, income statements, monthly reconciliations, and any and all other documents necessary to fully and accurately disclose all purchases and payments for livestock, sales of livestock, and all other transactions involved in the business, and

8

shall make all such documents available to the Packers and Stockyards Division when lawfully requested to do so.

28.     In settlement of the civil penalties that Plaintiff contends are due, Defendants agree to a civil penalty in the amount $117,750.00 (one-hundred-seventeen thousand seven-hundred-fifty dollars).

29.     Plaintiff shall pay $50,000.00 (fifty thousand dollars) of that amount in six equal installments of $8,333.33 (except for the first payment, which shall be $8,333.36).  The first installment shall be due on the first of the month after the month in which this Consent Decree is signed and filed by the Court.  For instance, if this Consent Decree is signed and filed at any point in July, then the first payment will be due August 1, 2018.  Every payment thereafter shall be due on the first of each consecutive month until the total of $50,000.00 has been paid. Payment shall be sent to: Attention Financial Litigation Unit, 444 S.E. Quincy, Suite 290, Topeka, KS 66683, with a copy of this consent decree.

30.     The remaining $67,750.00 (sixty-seven thousand seven-hundred-fifty dollars) of the civil penalty will be held in abeyance for six years from the date that the Consent Decree is signed and filed by the Court. After six years, the penalty shall be deemed discharged. The penalty will accrue interest at the rate computed under 28 U.S.C. § 1961. It shall become immediately due and payable in full upon a court finding that Defendants have violated this Consent Decree, as long as the violation occurs before the penalty is discharged.

31.     Defendants agree to suspend their market agency operations, including any and all consignment sales subject to the PS&A and regulations, for a period of two consecutive regularly conducted sales occurring on July 24 and July 31. Defendants shall not set any special or additional sales between July 18 and August 6 to nullify or avoid the effect of the suspended sales.

32.     Any future violations of sections 307 and 312 of the P&SA, 9 C.F.R. § 201.42, the 2012 Consent Decision, the 2014 Consent Decision, and this Consent Decree may result in the assessment of additional civil penalties and/or contempt actions as this Court deems appropriate. Given Defendants' prior conduct, if this Court ever finds that Defendants have acted in contempt of this Court's order, the parties agree that suspension from operating under the Act in any capacity for at least eight (8) consecutive, regularly scheduled livestock sales would be an appropriate part of any relief, remedy, or means of gaining compliance with the Court's order, even if it is for the first such contempt proceeding.  If Defendants contest Plaintiff's determination of any future violation, they may contest the determinations through written motions with this Court.

33.     This Order shall remain in effect and the Court shall retain jurisdiction for the purpose of enforcing this Decree.

34.     Each of the parties to this Consent Decree shall bear its/their own attorney's fees and costs, including the preparation and performance of this Consent Decree.

IT IS SO ORDERED, this 12th day of July, 2018

/s/   John W. Lungstrum
United States District Judge

Agreed to and Respectfully Submitted by:

STEPHEN R. MCALLISTER
United States Attorney

Date: 7/11/18

Jason E. Oller, #24341
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH:  913.551.6730
FX:  913.551.6541
Jason.Oller@usdoj.gov
*Attorney for Plaintiff*

Date: 7/10/18

Tyler Gillum,
Individually with advice of counsel

Date: 7/10/18

Tyler Gillum
Owner and President of Plainville Livestock Commission, Inc. with advice of counsel

11